UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL S. EVERETT (#237136)** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-638-BAJ-SDJ** |
| **LT. ALLEN, ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law, and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 3, 2023.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MICHAEL S. EVERETT (#237136)**                    **CIVIL ACTION**

**VERSUS**                                                              **NO. 21-638-BAJ-SDJ**

**LT. ALLEN, ET AL.**

<u>**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**</u>

The *pro se* Plaintiff, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this proceeding pursuant to 42 U.S.C. § 1983 against numerous defendants, complaining that his constitutional rights were violated due to deliberate indifference to his serious medical needs, harassment, retaliation, and his conditions of confinement. He seeks monetary and declaratory relief.

**28 U.S.C. §§ 1915(e) and 1915A**

Pursuant to 28 U.S.C. §§ 1915(e) and 1915A, this Court is authorized to dismiss an action or claim brought by a prisoner who is proceeding *in forma pauperis* or is asserting a claim against a governmental entity or an officer or employee of a governmental entity if satisfied that the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. An action or claim is properly dismissed as frivolous if the claim lacks an arguable basis either in fact or in law. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992), *citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hicks v. Garner*, 69 F.3d 22, 24-25 (5th Cir. 1995). A claim is factually frivolous if the alleged facts are "clearly baseless, a category encompassing allegations that are 'fanciful,' 'fantastic,' and 'delusional.'" *Id*. at 32-33. A claim has no arguable basis in law if it is based upon an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998). The

law accords judges not only the authority to dismiss a claim which is based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations. *Denton v. Hernandez*, *supra*, 504 U.S. at 32. Pleaded facts which are merely improbable or strange, however, are not frivolous for purposes of § 1915. *Id*. at 33; *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992). A § 1915 dismissal may be made any time, before or after service of process and before or after an answer is filed, if the court determines that the allegation of poverty is untrue; or the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) and *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

### Plaintiff's Allegations

*Medical Treatment*

On March 1 and March 10 of 2021, Plaintiff submitted sick call requests asking to see his primary care provider in order to have his prescriptions for Fit Right wipes and hemorrhoid ointment renewed and to inquire about an MRI and bleeding. On March 11, 2021, Plaintiff sent a letter with copies of the two sick call requests to Defendant Michel, who informed Plaintiff that his correspondence had been forwarded to Defendant Oliveaux. Defendant Oliveaux told Plaintiff that she received his letter, but the envelope did not contain the copies of the two sick call forms. Defendant Oliveaux told Plaintiff she could access the forms on the computer.

On March 23, 2021, Plaintiff filed a third sick call request regarding the same medical issues. Due to the lack of Fit Right wipes, Plaintiff experienced bleeding from his anus. On March 29, 2021, he declared himself a medical emergency to Officer Jones. After seeing blood mixed with feces, Officer Jones stated that she would call medical. Before Officer Jones could complete the call, shift change occurred, and Mst. Sgt. White took over. Defendant EMT

Gautreaux told Mst. Sgt. White to inform Plaintiff that they were busy, to complete a sick call, and that he would then be seen by someone that night or the next morning. Plaintiff explained that he had already submitted several sick calls, and Mst. Sgt. White instructed Plaintiff to go to the captain's office and explain his situation.

On his way to the captain's office, Plaintiff saw Defendant Brown in the dining hall. Plaintiff produced the blood and feces and informed Defendant Brown that he suffered from hemorrhoids. Defendant Brown told him to "get out" and to go to the captain's office. When Plaintiff arrived at the office, he explained all of the foregoing to Captain Walker. The captain was flabbergasted and told Plaintiff, "Everett, go call your people." Plaintiff then contacted his family.

On Saturday April 3, 2021, Plaintiff again experienced bleeding and was declared an emergency by Mst. Sgt. Monyei. Defendant Holt instructed Plaintiff to complete a sick call and informed Plaintiff that that his name would be put on the list to see the doctor. Plaintiff was not seen by medical until the following Monday.

Due to weaking of his legs, Plaintiff was seen by Defendants White and Barksmeyer. Plaintiff requested use of an assistive device, but his request was denied. Plaintiff was scheduled for an MRI on June 17, 2021. On June 16, 2021, he was told that his vaccine appointment was canceled. Plaintiff was then put in quarantine, which resulted in his being confined for 23 hours per day (with the exception of showers and phone use) from June 17, 2021, until July 23, 2021.

Defendants Jordan and Harrison are knowledgeable of the ineptness of Plaintiff's primary care providers. They are also aware of the unprofessional and unsanitary practices of Defendant McCrae. Defendant Dr. Roundtree was negligent in allowing treatment without an MRI.

### Harassment

In March of 2021, Defendants Lt. Allen and Major Butler began harassing Plaintiff about his duty status and implying that he was faking his medical conditions. Plaintiff informed Defendant Brown and his complaint was investigated by Major Linsley. Subsequently, Plaintiff was written up, per the order of Defendant Hines, for remaining in the canteen line per the instructions of Master Sergeant Patterson. Patterson informed Plaintiff that he was being written up only because Patterson was instructed to do so by his supervisor.

Plaintiff was later called to Defendant Johnson's office regarding his complaint made against Defendant Allen. Plaintiff informed Defendants Brown and Jackson that he did not wish to speak with them and attempted to leave. Plaintiff was ordered to stay, and Defendant Jackson questioned the reason for Plaintiff's complaint since Defendant Allen was entitled to ask to see Plaintiff's duty status. Plaintiff agreed but also remarked that Defendant Allen's questioning of his medical conditions was above her paygrade. Defendant Jackson told Defendant Brown that Plaintiff was a "smartass" and then told Plaintiff to leave. Upon return to his dorm, Plaintiff was told to pack his belongings.

In May of 2021, Plaintiff encountered Defendant Brown in the eye clinic and requested to speak with him. Defendant Brown responded with contempt, and Plaintiff made a remark about the same. Defendant Brown then, in a vile manner, told Plaintiff to sit.

### Retaliation

Plaintiff believes his lack of medical treatment and harassment are due, in part, to retaliation for the filing of a grievance in February of 2021. This grievance was rejected by Defendant Robinson, who falsified the incident dates in order to reject Plaintiff's grievance.

Plaintiff proceeded to step two and signed for the response on June 14, 2021. He was thereafter placed in quarantine in order to prevent him from filing a timely complaint.

### *Official Capacity Claims*

### *Monetary Damages*

As to any claims Plaintiff may be asserting against Defendants in their official capacities, section 1983 does not provide a federal forum for a litigant who seeks the recovery of monetary damages against state officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 64 (1989). Additionally, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in his official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id*. at 25. Accordingly, Plaintiff's claims for monetary damages asserted against Defendants in their official capacities are subject to dismissal. In contrast, Plaintiff's claims for monetary damages asserted against Defendants in their individual capacities remain viable because a claim against a state official in his individual capacity, seeking to impose liability for actions taken by the official under color of state law, is not treated as a suit against the state. Of course, Plaintiff must prove a deprivation of a constitutional right to obtain any relief.

*Individual Capacity Claims*

*Personal Involvement*

In order for a prison official to be found liable under § 1983, the official must have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed. *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983). Any allegation that a defendant is responsible for the actions of subordinate officers or co-employees under a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009), *citing Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978). *See also Bell v. Livingston*, 356 F. App'x. 715, 716–17 (5th Cir. 2009) (recognizing that "[a] supervisor may not be held liable for a civil rights violation under any theory of *respondeat superior* or vicarious liability"). Further, in the absence of direct personal participation by a supervisory official in an alleged constitutional violation, an inmate plaintiff must allege that the deprivation of his constitutional rights occurred as a result of a subordinate's implementation of the supervisor's affirmative wrongful policies or as a result of a breach by the supervisor of an affirmative duty specially imposed by state law. *Lozano v. Smith*, *supra*, 718 F.2d at 768.

In the instant matter, Plaintiff has not alleged any personal involvement on the part of Defendants Warden Hooper, LPN Bellinger, Warden Russ, and Secretary James LeBlanc. Plaintiff's Complaint is devoid of any allegations with regards to these Defendants. To the extent Plaintiff alleges that any of these Defendants are responsible for the actions of their subordinates, a theory of vicarious responsibility or *respondeat superior* is alone insufficient to state a claim under § 1983.

### *Administrative Proceedings/Informal Complaints*

To the extent Plaintiff complains of the mishandling of his grievances and/or informal complaints, an inmate does not have a constitutional right to have his prison disciplinary or administrative proceedings properly investigated, handled, or favorably resolved. *Mahogany v. Miller,* 252 F. App'x. 593, 595 (5th Cir. 2007), and there is no procedural due process right inherent in such a claim. As stated by the United States Court of Appeal for the Fifth Circuit in *Geiger v. Jowers,* 404 F.3d 371 (5th Cir. 2005) (in the context of the handling of an administrative grievance):

> Insofar as [the plaintiff] seeks relief regarding an alleged violation of his due process rights resulting from the prison grievance procedures, the district court did not err in dismissing his claim as frivolous…[The plaintiff] does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless. *Id*. at 373-74.

### *Verbal Abuse*

With regards to the alleged harassment by Defendants Allen, Butler, Brown, and Jackson, allegations of mere verbal abuse, in the form of threats, insults, or harassment, even if true, do not amount to a constitutional violation. *Orange v. Ellis,* 348 Fed. Appx. 69, 72 (5th Cir.2009); *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983).

### *Conditions of Confinement*

Turning to the 36 days Plaintiff was confined for quarantine purposes except to shower and make phone calls, this claim may be seen to arise under the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, which provision prohibits the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991), *citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The prohibition against cruel and unusual punishment, however, mandates only that prisoners be afforded humane conditions of

confinement and that they receive adequate food, shelter, clothing, and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones").

A constitutional violation occurs only when two requirements are met. First, there is the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter, supra*, 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison official responsible for the deprivation has been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff has not identified any basic human need of which he was deprived during the relatively brief period spent in quarantine.

### *Access to the Courts*

With regards to Plaintiff's claim that he was placed in quarantine in order to interfere with his right of access to the courts, a substantive right of access to the courts has long been recognized. *Lewis v. Casey,* 518 U.S. 343, 347 (1996), *citing Bounds v. Smith,* 430 U.S. 817, 821 (1977). Specifically, access to the courts is incorporated into the First Amendment right to petition the government for redress of grievances. *Driggers v. Cruz,* 740 F.3d 333, 336–37 (5th Cir. 2014) citing *Bill Johnson's Rests., Inc. v. N.L.R.B.,* 461 U.S. 731 (1983). In its most obvious and fundamental manifestation, this right protects an inmate's physical access to the courts. Thus, for example, prison officials may not block or refuse to transmit, through procedural devices or otherwise, the transmission of legal documents that prisoners wish to send to the courts. *Ex parte*

*Hull,* 312 U.S. 546 (1941) (striking down a state regulation prohibiting prisoners from filing petitions for habeas corpus without the approval of a state official); *Jackson v. Procunier,* 789 F.2d 307, 310–11 (5th Cir. 1986) (prison officials may not deliberately delay mailing legal papers when they know that such delay will effectively deny a prisoner access to the courts). Nor can they take other actions—such as confiscating or destroying legal papers—that would have a similar effect. *See Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir. 1994), *citing Crowder v. Sinyard,* 884 F.2d 804, 811 (5th Cir.1 989). The fundamental constitutional right of access to the courts also requires that prison authorities assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). This right extends to pretrial detainees as well as to convicted inmates. *Boyd v. Nowack,* 2010 WL 892995, *2 (E.D. La. March 11, 2010), *citing United States v. Moya–Gomez,* 860 F.2d 706, 743 (7th Cir. 1988).

The right of access to the courts, however, "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis v. Casey, supra,* 518 U.S. at 356. Further, in order to prevail on a claim of interference with access to the courts, an inmate claimant must be able to show that has he suffered some cognizable legal prejudice or detriment as a result of the defendant's actions. *Eason v. Thaler,* 73 F.3d 1322, 1328 (5th Cir. 1996). In addition, the plaintiff must be able to show that the defendant had an intent to interfere with the plaintiff's right to submit pleadings to the courts or was otherwise deliberately indifferent to the plaintiff's wish to do so. *See Herrington v. Martin,* 2009 WL 5178340, *2 (W.D. La., Dec. 23, 2009) (recognizing that "[a]n 'access to courts' claim is actionable only if the deprivation

stemmed from intentional conduct on the part of the defendant; 'access to courts' claims premised on a defendant's mere negligence or inadvertence are not cognizable under § 1983"). Finally, an inmate's right to seek access to the courts is limited to the making of non-frivolous claims involving the assertion of legitimate constitutional rights. *Johnson v. Rodriguez,* 110 F.3d 299, 311 (5th Cir. 1997). Therefore, because the right to access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court," *Christopher v. Harbury,* 536 U.S. 403, 415 (2002), "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint." *Id.*

In the present matter, the Complaint fails to state a claim for denial of access to the courts. Plaintiff asserts that he was unable to file a timely suit after receiving the Second Step response to a grievance. However, Plaintiff has not described any underlying cause of action as required. Nor does Plaintiff assert that any claims he intended to present were non-frivolous.

Additionally, Plaintiff has not alleged to have suffered any legal prejudice or detriment as a result of Defendants' actions. Even assuming Plaintiff waited 90 days to file his grievance, prescription was suspended from the date of filing in February of 2021 until the date Plaintiff received the Second Step response on June 14, 2021. When Plaintiff was released from quarantine on July 23, 2021, Plaintiff would have had at least 236[1] days remaining within which

---

[1] The filing of an administrative grievance, however, only tolls or suspends, and does not interrupt, the running of the prescriptive period. *See* La. R.S. 15:1172(E) (providing that the limitations period for a prisoner's claim "shall be suspended upon the filing of [an administrative] ... grievance and shall continue to be suspended until the final agency decision is delivered"). Thus, this Court is required to count against Plaintiff the passage of days that elapsed both before the filing of the pertinent administrative grievance and after the conclusion of the administrative proceedings. In the instant matter, the Court has assumed Plaintiff waited 90 days to file his grievance. Thereafter, prescription was suspended from February 21, 2021, until June 14, 2021. Then, 39 days elapsed while Plaintiff was held in quarantine, leaving approximately 236 days in the prescriptive period during which time Plaintiff could have filed suit.

to file suit. Plaintiff offers no explanation as to how the brief period spent in quarantine prevented him from subsequently filing a timely suit within the remaining prescriptive period.

### *Retaliation*

Turning to Plaintiff's retaliation claim, it is prohibited for prison officials to take action against an inmate in retaliation for the inmate's exercise of his constitutional rights. *See Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Claims of retaliation by prison inmates, however, are regarded with skepticism, lest the federal courts potentially embroil themselves in every adverse action that occurs within a penal institution. *Woods v. Smith, supra*, 60 F.3d at 1166. Accordingly, to prevail on a claim of retaliation, a prisoner must establish (1) that he was exercising or attempting to exercise a specific constitutional right, (2) that the defendant intentionally retaliated against the prisoner for the exercise of that right, (3) that an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant, and (4) that there is causation, *i.e.*, that "but for" the retaliatory motive, the adverse action would not have occurred. *Morris v. Powell, supra*, 449 F.3d at 684. *See also Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). An inmate must allege more than his mere personal belief that he is the victim of retaliation, *Johnson v. Rodriguez*, 110 F.3d 299 (5th Cir. 1997), and inasmuch as claims of retaliation are not favored, it is the plaintiff's burden to provide more than conclusory allegations of retaliation:

> To state a claim of retaliation an inmate must ... be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred. This places a significant burden on the inmate.... The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.

*Woods v. Smith, supra*, 60 F.3d. at 1166.

In the instant matter, Plaintiff has not alleged that "but for" the retaliatory motive, the adverse action would not have occurred. Plaintiff acknowledges that he was initially placed in administrative segregation for a 10-14 day period for quarantine purposes because he was not vaccinated. Due to various inmates' being housed together, Plaintiff was required to extend his quarantine period after being exposed to other inmates. As such, Plaintiff has not alleged facts indicating that, "but for" the retaliatory motive, the alleged adverse action would not have occurred.

### *Deliberate Indifference*

A prison official violates the Eighth Amendment's prohibition of cruel and unusual punishment if the official shows deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–06 (1976). The official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety" and "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists". *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The official also must draw that inference. *Id*.

Failed treatments, negligence, and medical malpractice are insufficient to give rise to a claim of deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). A prisoner who disagrees with the course of treatment or alleges that he should have received further treatment also does not raise a claim of deliberate indifference. *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Instead, an inmate must show that prison officials denied him treatment, purposefully provided him improper treatment, or ignored his medical complaints. *Id*. A delay in treatment may violate the Eighth Amendment if the delay was

the result of the prison official's deliberate indifference and substantial harm—including suffering—occurred during the delay. *Easter v. Powell*, 467 F.3d 459, 464–65 (5th Cir. 2006).

Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs by delaying renewed treatment for hemorrhoids. Generally speaking, hemorrhoids do not constitute a serious medical condition, the delay in treatment of which would amount to a constitutional violation. *Lowman v. Perlman,* No. 9:06–CV–0422, 2008 WL 4104554, at *5 (N.D.N.Y. Aug. 29, 2008) (Kahn, D.J. and Treece, M.J.); *Cabassa v. Gummerson,* No. 01–CV–1039, 2006 WL 1559215, at *9–10 (N.D.N.Y. Mar. 30, 2006) (Lowe, M.J.), *report and recommendation adopted,* 2006 WL 1555656 (N.D.N.Y. Jun. 1, 2006) (Hurd, D.J.); *Kendall v. Kittles,* No. C0 Civ. 628(GEL), 2004 WL 1752818, at *6 (S.D.N.Y. Aug. 4, 2004) ("Hemorrhoids, albeit uncomfortable, are a minor issue, far removed from the category of medical conditions that have been deemed 'sufficiently serious' by other courts.")[2]. In the instant matter, Plaintiff has alleged only that he experienced some bleeding while trying to wipe thoroughly.

Plaintiff also alleges that his request for an assistive device to aid him with walking was denied. In that regard, Plaintiff alleges only that he should have received further treatment. Such allegations do not show deliberate indifference on the part of any Defendant.

---

[2] Compare *Muhammad v. New York Dep't of Corrs.,* No. 10 Civ. 1707, 2011 WL 797506 (S.D.N.Y. Feb. 3, 2011) (where plaintiff alleged that his hemorrhoids caused him to experience "unbearable and excruciating pain, left him chronically weakened, and has interfered with daily activities by making it practically impossible for him to use the bathroom", plaintiff "sufficiently pled that his medical condition constituted a serious medical need" although "at some later stage in the litigation" it may become clear that the claims are not adequately supported), *report and recommendation adopted,* 2011 WL 797672 (S.D.N.Y. Mar. 3, 2011).

Plaintiff's Complaint fails to state a constitutional violation on the part of any Defendant. As such, the Complaint should be dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim upon which relief may be granted.

### State Law Claims

*Supplemental Jurisdiction*

To the extent that Plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this Court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having recommended that most of the Plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

### RECOMMENDATION

It is recommended that the Court decline the exercise of supplemental jurisdiction over any potential state law claims, and that Plaintiff's claims be dismissed, with prejudice, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A.[3]

Signed in Baton Rouge, Louisiana, on May 3, 2023.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Plaintiff is advised that 28 U.S.C. § 1915(g) provides that, "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [Proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."